**DUANE MORRIS LLP**
Gerald L. Maatman, Jr. (*pro hac vice* forthcoming)
gmaatman@duanemorris.com
Jennifer A. Riley (*pro hac vice* forthcoming)
jariley@duanemorris.com
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Telephone: +1 312 499 6700
Fax: +1 312 499 6701

**DUANE MORRIS LLP**
Nick Baltaxe (SBN 329751)
nbaltaxe@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: +1 213 689 7400
Fax: +1 213 689 7401

Attorneys for Defendant
CAPSTONE LOGISTICS, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIA VARGAS, MARIA BARRERA, on behalf of themselves and all others similarly situated, and on behalf of the general public;<br><br>Plaintiffs,<br><br>v.<br><br>CAPSTONE LOGISTICS, LLC, a limited liability company; and DOES 1 through 20, inclusive<br><br>Defendants. | Case No.:<br><br>**DEFENDANT CAPSTONE LOGISTICS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Removed Stanislaus County Superior Court, Case No. CV-24-000265]<br><br>*[Filed concurrently with Declaration of Gregory B. Tuman; Request for Judicial Notice, Notice of Interested Parties, and Corporate Disclosure Statement]*<br><br>Complaint Filed: January 9, 2024 |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant CAPSTONE LOGISTICS, LLC ("Capstone" or "Defendant") hereby removes the above-captioned case from the Superior Court of the State of California, County of Stanislaus, to the United States District Court for the Eastern District of California, asserting original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")).

## I. BACKGROUND

1. On January 9, 2024, Plaintiffs Antonia Vargas and Maria Barrera ("Plaintiffs") filed a Class and Representative Action Complaint ("Complaint") in the Superior Court of the State of California, County of Stanislaus ("Superior Court"), entitled *Antonia Vargas, et al. v. Capstone Logistics, LLC,* Case Number CV-24-000265. Plaintiffs assert causes of action against Capstone Logistics, LLC ("Capstone" or "Defendant") for alleged wage-and-hour violations. (Declaration of Gregory B. Tuman in Support of Capstone's Notice of Removal ("Tuman Decl.") ¶ 8, Ex. A (Plaintiffs' Class and Representative Action Complaint ("Compl.")).)

2. Plaintiffs base their claims on alleged violations of the California Labor Code. Specifically, Plaintiffs claim that Defendant violated the Labor Code by: (1) failing to provide Plaintiffs and other putative class members with meal periods in accordance with California law; (2) failing to provide Plaintiffs and other putative class members with rest periods in accordance with California law; (3) failing to pay Plaintiffs and other putative class members all wages for hours worked; (4) failing to provide Plaintiffs and other putative class members with accurate itemized wage statements; (5) failing to timely pay Plaintiffs and other putative class members wages owed at separation; (6) failing to timely pay Plaintiffs and other putative class members during their employment tenures; (7) failing to reimburse Plaintiffs and other putative class members for necessary business expenses; (8) failing to pay

Plaintiffs and other putative class members overtime wages for time worked; (9) failing to provide Plaintiffs and other putative class members a place of employment that is safe and healthful; and (10) engaging in unfair competition. Plaintiffs also seek penalties for alleged violations of the Private Attorneys General Act ("PAGA"). (*Id.* ¶¶ 18-100.)

3. In the Complaint, Plaintiffs seek to represent a putative class (the "Class") consisting of "all current and former California employees of Defendants since the date four (4) years prior to the filing of this Complaint."[1] (*Id.* ¶ 30.) The class period, pursuant to Plaintiffs' definition of the putative class, would extend from January 9, 2020 to present.

4. On February 5, 2024, Defendant was served and received a copy of the Complaint, Summons, the Civil Case Cover Sheet, and Notice of Case Management Conference. (Tuman Decl. ¶ 8.) A true and correct copy of the contents of this service package are attached as **Exhibit A** to the Declaration of Gregory B. Tuman in Support of Capstone's Notice of Removal.

5. On February 13, 2024, Plaintiff posted a Proof of Service of Summons. A true and correct copy of the Proof of Service of Summons, which was downloaded from https://www.stanislaus.courts.ca.gov/online-services/case-index-lookup on February 26, 2024 are attached to Capstone's Request for Judicial Notice as **Exhibit B.**

6. The Stanislaus County Superior Court's electronic docket indicates a Case Management Conference is set for May 13, 2024, at 8:30 a.m.

## II. TIMELINESS OF REMOVAL

7. This Notice of Removal is timely filed because it is filed within 30 days of service of the initial pleading. *See* 28 U.S.C. § 1446(b)(1) & (b)(3).

---

[1] Defendant maintains that Plaintiff's class definition is overbroad and, thus, is limiting this consideration to only non-exempt employees. If Plaintiff were to also include exempt employees, the amount in controversy would only increase.

## IV. CLASS ACTION FAIRNESS ACT REMOVAL

8. This Court has original subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2), because: (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

9. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding a notice of removal "need not contain evidentiary submissions"). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exist." *Id.* at 89. Evidence is required "only when plaintiff contests, or the court questions the defendant's allegation." *Id.*

10. The United States Supreme Court in *Dart Cherokee* held that "no anti-removal presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* Following *Dart Cherokee*, the Ninth Circuit has directed district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1184 (9th Cir. 2015); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly alleges the basis for removal).

### A. The Putative Class Exceeds 100

11. The number of putative class members in this action is greater than 100. 28 U.S.C. § 1332(d)(5)(B). Indeed, Plaintiffs' alleged employer, Capstone, employed

approximately 16,071 hourly non-exempt employees in the State of California from January 5, 2020, to January 27, 2024.  (Tuman Decl. ¶ 11.)

### B. The Putative Class And Defendant Are Minimally Diverse

12. CAFA requires only minimal diversity for purposes of establishing federal jurisdiction.  That is, at least one putative class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  Additionally, minimal diversity is found if any putative class member is a citizen of a foreign state and any defendant is a citizen of a state.  28 U.S.C. § 1332(d)(2)(B).  In this case, both Plaintiffs are citizens of California, while Defendant is a citizen of Delaware and Georgia.  (Tuman Decl. ¶ 7.)

#### 1. Plaintiffs are both Citizens of California

13. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983.)  A person's domicile is the place where he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  Citizenship is determined by the individual's domicile at the time the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Additionally, in order to be a citizen of a state, a person must be a citizen of the United States.  *Kanter,* 265 F.3d at 857 ("To be a citizen of a State, a natural person must first be a citizen of the United States.").

14. In the Complaint, Plaintiff Antonia Vargas alleges that she is a resident of Newman, California.  (Ex. A., Compl. ¶ 14.)  Plaintiff Maria Barrera likewise alleges that she is a resident of the State of California.  (*Id.*)  Additionally,

documentation provided to Capstone by both Plaintiffs during their employment indicates that they reside in California.  (Tuman Decl. ¶ 9.)  Accordingly, Plaintiffs are both citizens of the State of California.

### 2. Defendant Capstone Logistics, LLC is Not a Citizen of California

15. Plaintiffs name Capstone Logistics, LLC as a Defendant.  As a general rule, a limited liability company is a citizen of every state of which its members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations.  Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction … an LLC is a citizen of every state of which its owners/members are citizens.").

16. For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10); *Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

17. A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010).  In *Hertz*, the Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates … with a corporation's headquarters." *Id.* The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination … and not simply an office where the corporation holds its board meetings (for example, attended by directors

and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

18. For removal purposes, citizenship is measured both when the action is filed and when it is removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter,* 265 F.3d at 857.

19. At all times since Plaintiffs commenced this lawsuit, Defendant has been and is a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State of Georgia. (Tuman Decl. ¶¶ 4-7.) Defendant has maintained its corporate headquarters in Peachtree Corners, Georgia. Its corporate executives, including its senior leadership team, have been and continue to be located in Georgia, have maintained and continue to maintain their offices in Georgia, and have performed and continue to perform their primary duties and job functions in Georgia. (*Id.*) Because Defendant was formed under the laws of the State of Delaware, and maintains its principal place of business in the State of Georgia, it is not a citizen of the State of California.

20. Because Defendant is a limited liability company, even if the Court looks to Defendant's sole member, it is not a citizen of the State of California. At the time Plaintiffs filed their lawsuit on January 9, 2024, Capstone Logistics, LLC consisted of one member: Capstone Logistics Holdings, Inc. (Tuman Decl. ¶ 5.) Capstone Logistics Holdings, Inc. is a Delaware corporation organized under the laws of the State of Delaware. (*Id.*) At all times since Plaintiffs commenced this lawsuit, Capstone Logistics Holdings, Inc. has maintained its principal place of business in Peachtree Corners, Georgia. (*Id.* ¶ 6.) Its corporate executives, including its senior leadership team, have been and continue to be located in Georgia, have maintained and continue to maintain their offices in Georgia, and have performed and continue to perform their primary corporate duties and job functions in Georgia. (*Id.* ¶ 7.)

21. Accordingly, CAFA's diversity requirement is satisfied because at least one putative class member – here, both Plaintiffs – and Defendant Capstone are citizens of different states.

### 3. Doe Defendants Have No Bearing on Diversity Jurisdiction

22. Pursuant to 28 U.S.C. §§ 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe Defendants 1 through 25 does not deprive this Court of jurisdiction. *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### C. The Amount In Controversy Exceeds The Statutory Minimum

23. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . . Overall, [the] new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its

provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

24. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make only a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 84 (2014). Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

25. As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (*quoting Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe."), *aff'd,* 631 F.3d 1010 (9th Cir. 2011).

26. While Defendant denies any liability as to Plaintiffs' claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. Defendant bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without any admission, the truth of the allegations (which Defendant disputes). Likewise, Defendant bases these calculations on the putative class alleged in the

Complaint, and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiffs have standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Defendant expressly reserves the right to challenge Plaintiffs' claims, adequacy, and standing to represent any class, Plaintiffs' class definition, Plaintiffs' ability to meet the requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

27. Because Plaintiffs have not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

28. As the U.S. Supreme Court has explained, a defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88. As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at

*3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

29. "Plaintiffs who prevail under the UCL are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages . . . or attorneys fees." *Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*, 2018 WL 7286502, at *5 (N.D. Cal. July 11, 2018) (internal quotation marks and citation omitted). In this case, Plaintiffs can recover damages on all but one cause of action – the ninth cause of action for the alleged violation of the UCL. Thus, under the UCL, Plaintiffs **could** recover monetary relief for the alleged Labor Code violations in the form of restitution. The only alleged Labor Code violation for which Plaintiffs cannot recover monetary relief under the UCL is his claim for waiting time penalties. *See Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *10 (N.D. Cal. Aug. 1, 2016), *on reconsideration,* 2016 WL 6248893 (N.D. Cal. Oct. 26, 2016) (noting "UCL claim may not rely on § 203 as a basis").

30. Plaintiffs seek the following monetary damages on behalf of the putative class: (1) premiums as a result of Defendant's alleged failure to provide meal periods (Ex. A., Compl. ¶ 41); (2) premiums as a result of Defendant's alleged failure to provide rest periods (*Id.* ¶ 47); (3) unpaid wages due to Defendant's alleged failure to pay all wages owed (*Id.* ¶ 56); (4) penalties as a result of Defendant's alleged failure to provide accurate itemized wage statements (*Id.* ¶ 61); (5) penalties as a result of Defendant's alleged failure to pay wages in a timely manner upon separation (*Id.* ¶ 67); (6) penalties as a result of Defendant's alleged failure to pay wages due during employment (*Id.* ¶ 72); (7) any unreimbursed necessary business expenditures (*Id.* ¶ 76); (8) unpaid overtime wages due to Defendant's alleged failure to pay minimum wages (*Id.* ¶ 79); (9) penalties as a result of Defendant's alleged failure to provide a place of employment that is safe and healthful (*Id.* ¶ 85); (10) penalties as a result of

Defendant's violations of Unfair Competition laws (*Id.* ¶ 93); and (11) penalties as a result of Defendant's violation of California's Private Attorney General Act (*Id.* ¶ 96).

### 1. Unpaid Meal Period Premium Claim

31. Plaintiffs allege that "[p]laintiffs and Defendants' California employees were routinely unable, and not authorized to take an uninterrupted 30-minute meal break for every shift they worked. Specifically, Plaintiffs and Defendants' California employees were forced to continue working through their meal breaks in order to assist Defendants' needs." (*Id.* ¶ 42.) Based on these alleged violations of the Labor Code, Plaintiff seeks unpaid meal period premiums. (*Id.* ¶ 43.)

32. California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." *Cal. Lab. Code* § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." (*Id.*) California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee may recover an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

33. While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 ("[A]ctions for restitution and under

Business and Professions Code section 17200 are subject to a four-year statute of limitation."). Accordingly, the proposed class period for the unpaid meal period premium claim is from **January 9, 2020, to present**.[2]

34. Defendant pays its non-exempt, hourly employees weekly. (Tuman Decl. ¶ 13.) There were approximately 16,071 current and former hourly non-exempt employees who were employed by Defendant in the State of California from January 5, 2020 to January 27, 2024. (Tuman Decl. ¶ 11.) During the proposed class period, the alleged putative class members worked a total of approximately 372,844 pay periods. (*Id.*)

35. Based on the allegations in the Complaint, assuming each putative class member is entitled to one hour of premium pay per each pay period for the alleged non-provision of meal periods, based on Plaintiffs' allegations, the amount in controversy on this claim would equal at least **$7,292.828.64** ($19.56/hour x 1 premium/pay period x 372,844 pay periods).

36. Defendant assumes only one meal period violation for each pay period, which is arguably less frequent than what Plaintiffs alleged, which is that Plaintiffs and all California employees "routinely" were forced to work through their meal periods. (*See* Ex. A., Compl. ¶ 42.) In other words, Defendant conservatively has calculated only a single meal period violation for each five-day workweek.

37. Based on Plaintiffs' allegations of systemic wage and hour violations, an estimated violation rate of one unpaid meal period premium per workweek per class member is reasonable. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147. 1151 (S.D. Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Ramirez v. HV Global Mgmt. Corp.*, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (concluding a 25% violation rate in a meal

---

[2] Defendant had to pull data from January 5, 2020 onward as it is the start of the workweek. However, Defendant notes that the data pull goes through January 27, 2024, not through the date of filing this Notice of Removal. The amount in controversy would only go up if additional data was pulled.

period violation claim reasonable and observing that courts in the Northern District have found violation rates of 25% to 60% reasonable); *Sanchez v. Abbott Labs.*, 2021 WL 2676057, at 4-5 (E.D. Cal. June 30, 2021) (holding that a 60 percent violation rate for meal period violations is reasonable when plaintiff alleged a "pattern and practice" of meal period violations); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but provides almost no allegations concerning the frequency of the alleged violations). Defendant's assumption of one violation every five work days represents an assumed violation rate of approximately 20%, which is reasonable given Plaintiffs' claim of an alleged pattern and practice of wage and hour violations.

## 2. Unpaid Rest Period Premium Claim

38. According to the Complaint, "[p]laintiffs and Defendants' California employees were routinely unable, and not authorized to take an uninterrupted 10-minute rest periods for every shift they worked. Specifically, Plaintiffs and Defendants' California employees were forced to continue working through their rest breaks in order to assist Defendants' needs." (*Id.* ¶ 48.) Based on these alleged violations of the Labor Code, Plaintiff seeks unpaid rest period premiums. (*Id.* ¶ 49.)

39. While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the unpaid rest period claim is from **January 9, 2020, to present**.

40. Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per pay period for the alleged non-

provision of rest periods, the amount in controversy on this claim would equal no less than **$7,292,828.64** ($19.56/hour x 1 premium/pay period x 372,844 pay periods).

41. This calculation assumes only one rest period violation for each pay period, which is arguably less frequent than Plaintiffs' allegation that they and putative class members were "routinely" not authorized to take their rest periods. (Ex. A., Compl. ¶ 48.) In other words, if an employee worked five days during a one-week period, Defendant conservatively calculated only a single rest period violation during that period.

42. Based on Plaintiffs' allegations of a pattern and practice of wage and hour violations, an estimated violation rate of one unpaid meal period premium per week per class member is reasonable. *See Bryant*, 284 F. Supp. 3d at 1151 (finding a 60% violation rate for meal periods and a 30% violation rate for rest periods reasonable); *Stanley*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but provided almost no allegations concerning the frequency of the alleged violations); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of 2.5 missed rest periods a week reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9. 2019) (holding that a 25 percent violation rate for rest periods, or 2.5 missed rest periods a week, was reasonable where Plaintiff alleged a "pattern and practice" of requiring the class to work during rest periods). Defendant's assumption of one violation in every five work days – or one violation in every ten rest periods – represents an assumed violation rate of approximately 10% and is reasonable given Plaintiffs' allegations of a supposed "pattern and practice" of violations.

### 3.   Plaintiffs' Claims for Wage Statement Violations.

43.   Plaintiffs further allege in their Complaint that "[d]efendants failed to issue Plaintiffs and Defendant's California employees accurately itemized wage statements. As Defendants failed to compensate Plaintiffs and Defendants' California employees with all wages due, as detailed above, their wage statements failed to accurately state all gross wages earned . . . total hours worked . . . and net wages earned." (Ex. A., Compl. ¶ 59.) Based on this alleged violation, Plaintiffs claim that they and other class members are entitled to penalties pursuant to Labor Code § 226(e). (*Id.* ¶ 61.)

44.   Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code § 226(e) is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.,* 134 Cal. App. 4th 365, 376 (2005); *Cal. Civ. Proc. Code* § 340(a). For purposes of this Notice of Removal, Defendant will use September 8, 2022 (i.e., one year before the date of the filing of the Complaint), through October 14, 2023, as the relevant period for this claim.

45.   In order to calculate the amount in controversy for Plaintiffs' wage statement claim, Defendant assumes, but does not admit (and, in fact, disputes), that all putative class members did not receive an accurate wage statement for all pay periods worked during the one-year statute of limitations for this claim. *See Moppin v. Los Robles Regional Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) (concluding a 100% violation rate was justified because the plaintiff asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements"). This assumption is reasonable given that Plaintiffs allege that Defendants knowingly, intentionally, and willfully failed to provide accurate wage statements to Plaintiff and putative class members as a result of

Defendant's failure to pay overtime. (Ex. A., Compl. ¶ 59.) Further, given the various violations alleged by Plaintiffs that are purportedly part of an allegedly larger pattern of supposed wage & hour violations, assuming a 100% violation is reasonable in light of the fact that Plaintiffs' wage statement claim is derivative of their alleged unpaid minimum wage, unpaid overtime wage, and unpaid meal and rest period premium claims.

46. As set forth above, during the period of January 5, 2024, to January 27, 2024, there were approximately 16,071 potential class members, who worked a total of approximately 372,844 pay periods. (Tuman Decl. ¶ 11.) Defendant pays its employees on a weekly basis. (Tuman Decl. ¶ 13.) The estimated number of pay periods during the year prior to the filing of the Complaint through present would equate to approximately 93,211 total pay periods worked (372,844 pay periods worked / 4). Thus, Plaintiffs allege approximately **$8,531,850** in potential statutory violations pursuant to Labor Code section 226(e) ((16,071 initial violations x $50) + (77,283 subsequent violations x $100)).

### 4. Plaintiffs' Claim for Attorneys' Fees

47. Plaintiffs further seek attorneys' fees in association with their claims. (Ex. A., Compl. ¶¶ 52, 61, 119, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

48. The Ninth Circuit in *Arias* explicitly confirmed that, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must

be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a reasonable benchmark for an attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g., Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132 (N.D. Cal. 2020) (concluding courts in the Ninth Circuit have treated a potential 25% fee award reasonable for purposes of calculating the amount in controversy in CAFA cases); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996 at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

49. Labor Code sections 226(e), 1194, and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages, unpaid meal and rest premiums, waiting time penalties, and statutory penalties for inaccurate wage statements. Assuming that Plaintiffs are able to recover attorneys' fees equal to 25% of the amount recovered for their purported claims for meal period and rest break violations, inaccurate wage statements, and waiting time penalties (excluding any attorneys' fees for injunctive relief or interest), the amount of attorneys' fees in controversy is at least **$5,779,376.82.**

### 5. Approximate Aggregate Amount In Controversy

50. Although Defendant denies Plaintiffs' allegations that they or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for meal and rest break violations, wage statement violations, and attorneys' fees, is **$28,896,884.10,** calculated as follows:

| | |
|---|---|
| **$7,292,828.64** | Unpaid Meal Period Premiums Claims |
| **$7,292,828.64** | Unpaid Rest Period Premium Claims |
| **$8,531,850.00** | Alleged Wage Statement Violation Penalties |
| **$5,779,376.82** | Attorneys' Fees |

**Total:   $28,896,884.10**

51. The figures above do not take into account damages associated with claims for alleged unpaid wages, including overtime, liquidated damages, or the monetary cost associated with Plaintiffs' requested injunctive relief.

52. As set forth above, the amount Plaintiffs have placed in controversy easily satisfies CAFA's $5,000,000 requirement. Indeed, using a conservative estimate, the total amount in controversy is at least **$28,896,884.10.**

**V.   VENUE**

53. Venue lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a). This action originally was brought in the Stanislaus County Superior Court of the State of California, which is located within the Eastern District of California. 28 U.S.C. § 84(a). Therefore, it is properly removed to this District.

**VI.   NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF**

54. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Stanislaus County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

**VII.   PRAYER FOR REMOVAL**

55. **WHEREFORE**, Defendant Capstone Logistics, LLC prays that this civil action be removed from the Stanislaus County Superior Court of the State of California, to the United States District Court for the Eastern District of California.

Dated: March 6, 2024								**DUANE MORRIS LLP**

By: */s/ Nick Baltaxe*
Gerald L. Maatman, Jr.
Jennifer A. Riley
Brandon L. Spurlock
Nick Baltaxe
Attorneys for Defendant CAPSTONE LOGISTICS, LLC