UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Antonia Vargas and Maria Barrera,<br><br>                      Plaintiffs,<br><br>    v.<br><br>Capstone Logistics, LLC, et al.,<br><br>                      Defendants. | No. 2:24-cv-00712-KJM-JDP<br><br>ORDER |

Defendant Capstone Logistics, LLC moves to compel arbitration of most of the claims brought by plaintiffs Antonia Vargas and Maria Barrera. As explained in this order, Capstone has shown Barrera agreed to arbitrate, but the parties have cited contradictory evidence about whether Vargas also agreed to arbitrate, so the court **grants the motion in part and otherwise holds it in abeyance**.

I.    **BACKGROUND**

Vargas and Barrerra claim Capstone violated California labor law. *See generally* Compl. ¶ 18, ECF No. 1-1. They allege Capstone did not allow them to take breaks, did not pay overtime wages, did not reimburse them for business expenses, did not take mandatory precautions against COVID-19, gave them inaccurate wage statements and delayed their final paychecks. *See id.* ¶¶ 18–26. Vargas and Barrera originally filed this action in California Superior Court. They proposed to litigate both on behalf of a proposed class and as representatives under California's

1

1   Private Attorneys General Act. *See generally id.* Capstone removed the case to this court under
2   the Class Action Fairness Act of 2005. *See generally* Not. Removal, ECF No. 1; 28 U.S.C.
3   § 1332(d).

4   After Capstone removed the case, it moved to compel arbitration of Barrera and Vargas's
5   individual claims, to dismiss claims they were seeking to assert on behalf of a proposed class and
6   to stay their non-individual claims under the Private Attorneys General Act. *See* Mot. Compel at
7   i, ECF No. 7. According to Capstone's human resources manager, Capstone has had a
8   "mandatory arbitration program" since long before Barrera and Vargas began working for the
9   company in 2022. *See* Dickinson Decl. ¶¶ 4–6, ECF No. 7-2. The arbitration program is spelled
10  out in the company's employee manual, which was available online when Barrera and Vargas
11  started. *See id.* ¶¶ 6–9.

12  The company's records show Barrera signed into its online system and acknowledged and
13  accepted the arbitration policy. *See id.* ¶¶ 9–19. The company does not have similar records for
14  Vargas. Although the company's records show Vargas created a username and password and
15  began filling out some forms, those records do not include a confirmation showing she ever heard
16  about or saw the handbook or arbitration policy. *See id.* ¶¶ 20–22. The company relies on a
17  declaration by Vargas's manager to fill this apparent gap. *See generally* Garcia Decl., ECF No.
18  7-1. According to the manager's declaration, it was his practice to "complete a thorough
19  onboarding and orientation with each new associate." *Id.* ¶ 7. At a trial, he would testify that he
20  went "page-by-page" through the handbook and arbitration policy on Vargas's first day, which
21  took about "two hours." *Id.* ¶¶ 8–12. Vargas disagrees. She also has submitted a declaration.
22  *See generally* Vargas Decl., ECF No. 17-1. She remembers spending only about five minutes
23  with her manager on her first day, not two hours. *Id.* ¶ 3. He told her what her salary would be
24  and asked for her social security number. *Id.* He did not explain she was agreeing to arbitration,
25  and he did not show her the handbook or even mention it. *Id.* ¶ 4. Before Capstone moved to
26  compel arbitration, she did not know about the arbitration policy, she never received a copy and
27  she did not know how to find it. *Id.* ¶ 7.

Despite this disagreement, there seems to be no question Capstone's arbitration policy, if enforced, would require Barrera and Vargas to submit the majority of their claims to individual arbitration. By the terms of the arbitration agreement, employees "agree to use binding arbitration, instead of going to court, as the sole and exclusive means to resolve any 'Covered Claims' that arise or have arisen." Arbitration Agreement ¶ 2, Dickinson Decl. Ex. C, ECF No. 7-2. "Covered Claims" include "any claim, dispute and/or controversy that [an employee] may have against the Company," including claims of "unpaid wages" and "any other similar federal, state or local law or regulation which may apply to the parties' employment relationship." *Id.* ¶ 3. The agreement also includes a class action waiver: "Covered Claims will be arbitrated only on an individual basis." *Id.* ¶ 5. The agreement "shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action." *Id.* And by the terms of the agreement, employees agree continued employment "is deemed to be an acceptance" of the arbitration agreement. *Id.* ¶ 2.

Barrera does not contest Capstone's assertion she agreed to these terms. Only Vargas puts forward any opposition to Capstone's motion to compel arbitration. She contends Capstone cannot compel her to arbitrate because she did not agree to arbitrate any claims. *See generally* Opp'n, ECF No. 17. Briefing is now complete. *See generally* Reply, ECF No. 18. The court submitted the matter without oral arguments.

**II.   DISCUSSION**

The parties to a federal lawsuit "are not required to arbitrate their disagreements unless they have agreed to do so." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014). Contracts to arbitrate can be inferred from the circumstances and the parties' actions, but a "clear agreement" is necessary. *Id.* (quoting *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 59 (2013)). A clear agreement can be inferred from an employee's decision to continue working after receiving reasonable notice that the employer has made an arbitration agreement part of its policy, as long as that agreement "does not interfere with vested employee benefits." *Id.* at 1093 (quoting *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 11 (2000)).

3

If one party disputes another's claim that they agreed to arbitrate, the Federal Arbitration Act requires the district court to "hear the parties" and determine whether "the making of the arbitration agreement" is "in issue." 9 U.S.C. § 4. That is, the court decides whether there is a "genuine dispute of material fact" under the standard of Federal Rule of Civil Procedure 56, which governs motions for summary judgment. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Under that rule, a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* If there is a genuine dispute of material fact, the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Barrera's agreement to arbitrate is not "in issue" under this standard. There is no genuine dispute of material fact that she agreed to arbitrate her claims individually. She signed into Capstone's system and acknowledged the handbook and arbitration agreement, as summarized above, and nothing suggests the arbitration agreement conflicted with any vested right she might have had.

By contrast, the record includes conflicting evidence about whether Vargas agreed to arbitrate her claims. There is no record of her acknowledging the policy through Capstone's online system, and as summarized above, she disputes her former manager's assertions about a two-hour meeting on her first day. Her dispute with Capstone is "genuine" and "material" under Rule 56. If, on the one hand, a fact-finder credits the manager's testimony, an arbitration agreement could be inferred from Vargas's decision to continue working. *See Davis*, 755 F.3d at 1093. The opposite would be true if a fact-finder instead accepted Vargas's version of events. It is not enough that the policy and handbook were available to her; California law requires "reasonable notice." *See, e.g.*, *Cerletti v. Ecolab, Inc.*, No. 18-00008, 2018 WL 11471626, at *4 (N.D. Cal. Feb. 27, 2018) (finding no agreement given lack of notice or even receipt); *Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-2009, 2015 WL 12910914, at *5–6 (S.D. Cal. Feb. 23, 2015) (reasoning similarly).

   Capstone incorrectly dismisses Vargas's declaration as "self-serving." *See* Reply at 4. A declaration is not objectionable simply because it is self-serving. *See United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). A party has little reason to submit evidence that does not serve its purposes. *See id.* Rejecting a claim merely because it is uncorroborated would amount to an assessment of the declarant's credibility, and credibility determinations are not provided for by the Rule 56 standard. *Anderson*, 477 U.S. at 255. A court may disregard a declaration only if it asserts conclusions rather than facts. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015). Vargas's declaration does not assert conclusions. She simply tells a different story than her manager does.

   The cases Capstone cites do not lead the court to a different conclusion. *See* Reply at 4. They exemplify the longstanding state-law contract rule that prevents people from avoiding contracts by arguing they signed the contract without reading it. *See Vega v. Tempoe, LLC*, No. 20-02322, 2021 WL 3615913, at *3 (C.D. Cal. Apr. 16, 2021) (applying California law); *Augustine v. TLC Resorts Vacation Club, LLC*, No. 18- 01120, 2018 WL 3913923, at *5 (S.D. Cal. Aug. 16, 2018) (applying Nevada law); *Totten v. Kellogg Brown & Root*, 152 F. Supp. 3d 1243, 1250 (C.D. Cal. 2016) (applying California law). Capstone has cited no evidence showing Vargas signed the arbitration agreement, and it is unclear on this record whether she knew about it before Capstone filed its current motion.

   Finally, Capstone objects to Vargas's declaration as irrelevant and prejudicial. *See generally* Evid. Objs., ECF No. 20. Her descriptions of the meeting with her manager and whether she knew about the handbook or arbitration policy are relevant under Rule 401. They support her claim that she did not agree to arbitrate. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). The court perceives no prejudice under Rule 403 if it considers her declaration. And Capstone does not explain what dangers or prejudices her declaration put in play, let alone why those dangers substantially outweigh the strong probative value of that declaration.

### III.   CONCLUSION

Vargas has cited evidence to show "the making of the arbitration agreement" is "in issue" under section 4 of the Federal Arbitration Act, but only with respect to her claims. There is no dispute Barrera agreed to arbitrate her claims individually.

"[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F. 4th at 672. The court therefore orders as follows:

- The motion to compel arbitration is **granted in part** as to the claims by Maria Barrera. She must pursue her claims individually in arbitration, including her claims under the California Private Attorneys General Act.
- The motion to compel arbitration otherwise **remains pending** and is **held in abeyance** until the factual dispute above has been resolved. The parties shall file a joint status report **within twenty-one days** providing proposed dates for trial and clarifying whether they believe trial should be by jury or a bench proceeding. The report shall include trial plans for both parties, identifying witnesses, exhibits and time necessary.
- Capstone's request to stay the plaintiffs' non-individual claims under the Private Attorneys General Act is likewise **held in abeyance**.

IT IS SO ORDERED.

DATED: November 18, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE